**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated:  March 6 2018**

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 16-33793 |
| | ) | |
| Randall Doll, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 17-03027 |
| | ) | |
| James Launder | ) | Judge John P. Gustafson |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Randall Doll, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OF DECISION AND ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT</u>

This Adversary Proceeding is before the court on Defendant-Debtor Randall Doll's ("Defendant-Debtor") Motion to Dismiss Adversary Proceeding & Motion for Summary Judgment [Doc. #12], Plaintiff James Launder's ("Plaintiff") Motion for Summary Judgment [Doc. #13], Plaintiff's Objection to Defendant's Motion [Doc. #14], and Defendant-Debtor's Response to Plaintiff's Motion [Doc. #15].  In the Complaint, Plaintiff seeks a determination that the debt

owed him by Defendant-Debtor is nondischargeable under 11 U.S.C. § 523(a)(2) and (a)(6). [Doc #1, pp 3-4].

The Court has jurisdiction over Defendant-Debtor's underlying Chapter 7 case and this adversary proceeding pursuant to 28 U.S.C. §§ 1334, 157(a), and Local General Order 2012–7 of the United States District Court for the Northern District of Ohio. Actions to determine dischargeability are core proceedings that this Court may hear and determine. 28 U.S.C. §157(b)(1) and (b)(2)(I).

For the following reasons, Plaintiff's Motion for Summary Judgment will be denied and Defendant-Debtor's Motion for Summary Judgment[1] will be denied.

## Factual Background

Defendant-Debtor owned and operated an automobile improvement business under the name "Randy's Body and Paint" located at 118 East Front Street, Pemberville, Ohio. [Doc. #13-2, p. 3]. On July 13, 2015, Defendant-Debtor and Plaintiff entered into an oral business agreement though which Defendant-Debtor agreed to perform repairs and improvements on a 1937 Ford replica kit car ("Ford Automobile Project"). [Doc. #12-1, p. 1; Doc. #13-2, p. 3]. In exchange, Plaintiff alleges that he paid Defendant-Debtor a $3,500 deposit, with a definite total cost of $5,500 due upon completion of the improvement work. [Doc. #13, p. 2; Doc. #13-2, pp. 3-4]. Defendant-Debtor, on the other hand, alleges that Plaintiff paid a deposit of $1,500, with an estimated total cost ranging from $5,500 to $6,500 due upon completion. [Doc. #12, pp. 1-2; Doc. #12-1, p. 2]. Defendant-Debtor further alleges that he did not give Plaintiff a definite total cost because Defendant-Debtor charged an hourly rate and could thus only provide Plaintiff with a cost estimate. [Id.]. Per Defendant-Debtor's version of events, Defendant-Debtor completed work on the first batch of Ford parts, after which Plaintiff picked up the finished parts, paid Defendant-Debtor with two separate checks amounting to $2,000, and dropped off a second batch of Ford parts. [Doc. #12-1, p. 2].

Defendant-Debtor asserts that he informed Plaintiff in October of 2015 that the total cost of the Ford Automobile Project would exceed the earlier estimate of $5,500 to $6,500, that

---

1/  Defendant-Debtor's Motion is titled "Motion to Dismiss Adversary Proceeding & Motion for Summary Judgment." [Doc. #12]. However, Defendant-Debtor only offers arguments in support of summary judgment and the court will address the Motion accordingly. *See*, *Lawson v. Conley* (*In re Conley*), 482 B.R. 191, 208 (Bankr. S.D. Ohio 2012)("The court is not obligated to research and construct the legal arguments open to parties particularly when they are represented by legal counsel."); *Gold v. Winget* (*In re NM Holdings Co., LLC*), 407 B.R. 232, 279 (Bankr. E.D. Mich. 2009).

17-03027-jpg    Doc 16    FILED 03/06/18    ENTERED 03/06/18 16:54:52    Page 2 of 21

$1,801.54 was due for work already performed, and that additional funds were needed for Defendant-Debtor to continue the project. [*Id.*]. Plaintiff refused Defendant-Debtor's request for additional funds and in response, Defendant-Debtor demanded that Plaintiff remove the unfinished automobile from Defendant-Debtor's premises and pay the outstanding balance. [*Id.*; Doc. #13-2, p. 2]. The parties agree that Plaintiff removed some of the parts from the premises, but could not fit all of the parts into his truck. [Doc. #12-1, pp. 2-3; Doc. #13-2, p. 4]. Though Plaintiff intended to return and pick up the remaining parts, Defendant-Debtor asserts that he informed Plaintiff over the phone that he refused to turn the parts over "[u]nder Ohio common law provisions." [Doc. #13-2, p. 4; Doc. # 12-1, p. 3]. Defendant-Debtor's Motion for Summary Judgment also avers that the retained parts have already been removed from Defendant-Debtor's possession by the Wood County Sheriff's Department. [Doc. #12, p. 7].

Plaintiff's version of events surrounding the breakdown of the Ford Automobile Project differs from Defendant-Debtor's in the following respects: 1) Plaintiff alleges that Defendant-Debtor said, "get your f---ing parts out of my shop and you don't owe me a dime," once Plaintiff refused Defendant-Debtor's request for additional funds [Doc. #13-2, p. 4]; 2) Plaintiff further alleges that Defendant-Debtor refused to turn over Plaintiff's remaining parts while stating, "if you don't give me an additional $1,800.00, you won't get your remaining parts," [*Id.*]; and, 3) Plaintiff also alleges total damages amounting to $20,647.00 "as a result of Defendant's breach of our initial agreement…." [*Id.*].

On January 25, 2016, Plaintiff filed a complaint against Defendant-Debtor and "Randy's Body and Paint" in the Hancock County Court of Common Pleas, Case No. 2016 CV 30 ("State Court Action"), for money damages stemming from Defendant-Debtor's allegedly improper handling of the Ford Automobile Project. [Doc. #13, Pl. Ex. A]. Relevant here, Count Six of Plaintiff's complaint ("Count Six") alleged violations of the Ohio Consumer Sales Practices Act ("OCSPA"), a statute that, among other things, authorizes an award of treble damages and attorney's fees to a prevailing litigant. [*Id.*, pp. 4-5; Ohio Rev. Code Ann. §§ 1345.09(B), (F)(2)]. Following Defendant-Debtor's failure to timely file a response to the complaint, Plaintiff filed a motion for default judgment. [Doc #13, Pl. Ex. B]. Plaintiff attached two affidavits to the motion, one describing Plaintiff's damages estimate and the other Plaintiff's attorney's fee estimate. [*Id.*, pp. 6-8].

Defendant-Debtor again failed to timely respond and on March 16, 2016, the Hancock

17-03027-jpg    Doc 16    FILED 03/06/18    ENTERED 03/06/18 16:54:52    Page 3 of 21

County Court of Common Pleas entered a Default Judgment ("Default Judgment") against Defendant-Debtor. [Doc. #1, Pl. Ex. C]. The Default Judgment contains the following pertinent language:

> The Court finds that Plaintiff's Complaint herein was filed on or about January 25, 2016. Service was perfected on both Defendants via certified mail on or about February 3, 2016, pursuant to Ohio Civil Rule 4.1(A)(1)(a).
>
> Twenty-eight (28) days has passed since the service upon the Defendants, and the Defendants have otherwise failed to plead or appear herein.
>
> The Plaintiff further submitted evidence by and through the Affidavit of James Launder and Bradley S. Warren, supporting Plaintiff's claims for damages herein.
>
> Accordingly, it is hereby **ORDERED** as follows:
>
> 1. Judgment shall be issued in favor of the Plaintiff, and against the Defendants, Randy Doll, aka Randall Doll and Randy's Body and Paint, jointly and severally, in the aggregate amount of $22,109.50 ($20,647.00 pursuant to Plaintiff's Exhibit 'A' and $1,462.50 in attorney fees, pursuant to Count Six of the Complaint and 'Exhibit B' of the Plaintiff Motion for Default)…

[*Id.*].

Defendant-Debtor attempted to file an Answer on March 22, 2016, but the Hancock County Court of Common Pleas vacated the late-filed Answer. [*Id.*, Pl. Ex. D, E]. Defendant-Debtor also filed a Motion for Relief from Judgment that was denied by the Hancock County Court of Common Pleas on June 13, 2016. [*Id.*, Pl. Ex. F, H].

On December 8, 2016, Defendant-Debtor filed a Chapter 7 Bankruptcy Petition. [Case No. 16-33793, Doc. #1]. Defendant-Debtor's Schedule E/F listed Plaintiff's Default Judgment as a nonpriority unsecured claim with an unknown value. [*Id.*, p. 19]. Plaintiff timely filed an Adversary Complaint objecting to discharge of the Hancock County judgment debt on April 3, 2017. [Doc. #1].

Plaintiff's Adversary Complaint seeks relief on three counts. [*Id.*]. First, Plaintiff alleges that Defendant-Debtor's handling of the Ford Automobile Project constituted the taking of Plaintiff's money and property by false pretenses, false representation, or actual fraud under 11 U.S.C. § 523(a)(2) and (a)(6). [*Id.*, p. 4]. Second, Plaintiff argues that Defendant-Debtor's retention of the body panels was willful, malicious, and a cause of economic injury under 11 U.S.C.

4

§ 523(a)(6). [*Id.*].   Third, Plaintiff contends that the Hancock County Court of Common Pleas' Default Judgment binds the parties and entitles Plaintiff to a nondischargeability determination on theories of *res judicata* and collateral estoppel. [*Id.*, p. 5].

In his Motion for Summary Judgment, Plaintiff focuses solely on *res judicata*[2] and argues that this court must give preclusive effect to the Default Judgment and determine that Defendant-Debtor's debt owed Plaintiff is nondischargeable under 11 U.S.C. § 523(a)(2) and (a)(6). [Doc. #13, pp. 4-6].

In his Answer, Defendant-Debtor asserts that the Hancock County Court of Common Pleas' Default Judgment does not contain any findings of fact or law and is thus not due preclusive effect under theories of *res judicata* or collateral estoppel. [Doc. #4, p. 3].   Defendant-Debtor further contends that this Adversary Proceeding should be dismissed for Plaintiff's failure to state a claim upon which relief can be granted. [*Id.*].   In his Motion to Dismiss and for Summary Judgment, Defendant-Debtor asserts three bases for relief. [Doc. #12].   First, Defendant-Debtor argues that *res judicata* does not apply to the Default Judgment because it contains no findings of fact and did not give Defendant-Debtor an opportunity to present evidence regarding the Ford Automobile Project dispute. [*Id.*, p. 4].   Second, Defendant-Debtor contends that Plaintiff has failed, in this case, to meet his burden of proving that Defendant-Debtor made false representations with an intent to deceive under 11 U.S.C. § 523(a)(2)(A). [*Id.*, p. 4-6].   Third, Defendant-Debtor argues that his retention of the Ford automobile body panels was supported by Ohio repairman's lien law, was not wrongful and malicious, and that Plaintiff suffered no irreparable economic harm as a result. [*Id.*, pp. 6-7].

## Law and Analysis

## I.  Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter

---

2/   Though Plaintiff and Defendant-Debtor use the general term *res judicata*, the Court understands this argument as one pertaining to the specific doctrine of collateral estoppel, or issue preclusion, and will refer to it as such. *See*, *Yust v. Henkel* (*In re Henkel*), 490 B.R. 759, 770-71 (Bankr. S.D. Ohio 2013)(discussing the differences between claim and issue preclusion under Ohio *res judicata* law).   Further, the United States Supreme Court has expressed a preference for the terms "claim preclusion" and "issue preclusion" instead of "*res judicata*" and "collateral estoppel." *Corzin v. Fordu* (*In re Fordu*), 201 F.3d 693, 702-03 (6th Cir. 1999)(citing *Migra v. Warren City Sch. Dist. Bd. Of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984)).

17-03027-jpg    Doc 16    FILED 03/06/18    ENTERED 03/06/18 16:54:52    Page 5 of 21

of law. Fed.R.Civ.P. 56(a).   In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88, 106 S.Ct. 1348, 1355-57, 89 L.Ed.2d 538 (1986).

The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).   The moving party can discharge its initial burden of proof by either coming forward with evidence showing the absence of a genuine issue of material fact, or by showing that there is no such issue by pointing out to the court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S.Ct. at 2554.

Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but...must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).   A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id.*   "The non-moving party, however, must provide more than mere allegations or denials ... without giving any significant probative evidence to support" its position. *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

The fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate.   "When parties file cross-motions for summary judgment, 'the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.'" *Parks v. LaFace Records*, 329 F.3d 437, 444-445 (6th Cir. 2003)(*quoting*, *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 593 (6th Cir. 2001)); 10a Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2720 (1998).

## II.   Exception to Discharge under § 523(a)(2)(A) and (a)(6)

Plaintiff seeks a determination that the debt owed him by Defendant in connection with the

6

Ford Automobile Project and resulting Default Judgment is nondischargeable under 11 U.S.C. §§523(a)(2)(A)[3] and 523(a)(6). Exceptions to discharge are strictly construed against the creditor and liberally in favor of the debtor. *Rembert v. AT&T Universal Card Servs. (In re Rembert),* 141 F.3d 277, 281 (6th Cir. 1998); *In re Livingston,* 372 F. App'x 613, 618 (6th Cir. 2010). Additionally, "[t]he objecting creditor bears the burden of proof by a preponderance of the evidence to establish the debt is of the type excepted from discharge." *Brann v. Oxford* (*In re Oxford*), 440 B.R. 772, 777 (Bankr. W.D. Ky. 2010)(citing *In re Molino,* 225 B.R. 904, 907 (6th Cir. BAP 1998)); *see also*, *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

**II(A).   11 U.S.C. § 523(a)(2)(A)**

Section 523(a)(2)(A) excepts from discharge a debt "for money, property, [or] services...to the extent obtained by – (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition...."  In order to except a debt from discharge under this section, a plaintiff must prove the following elements by a preponderance of the evidence: (1) the debtor obtained money, property, services or credit through a material misrepresentation, either express or implied, that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) the creditor's reliance was the proximate cause of loss. *Rembert,* 141 F.3d at 280-81.

Under § 523(a)(2)(A), "false representations and false pretenses encompass statements that falsely purport to depict current or past facts." *Baker v. Wentland* (*In re Wentland*), 410 B.R. 585, 594 (Bankr. N.D. Ohio 2009)(quoting *Peoples Sec. Fin. Co., Inc. v. Todd (In re Todd)*, 34 B.R. 633, 635 (Bankr. W.D. Ky. 1983)).  "False pretenses are distinguishable from false representations in that 'a false pretense involves an implied misrepresentation or conduct that is intended to create and foster a false impression while a false representation involves an express representation.'" *Coughlin Chevrolet, Inc. v. Thompson* (*In re Thompson*), 458 B.R. 409, 421 (Bankr. S.D. Ohio 2011)(quoting *Goldberg Securities, Inc. v. Scarlata* (*In re Scarlata*), 127 B.R. 1004, 1009 (N.D. Ill. 1991)); *see also*, *Wentland*, 410 B.R. at 594.

---

3/   While Plaintiff's Complaint only makes reference to § 523(a)(2), its use of § 523(a)(2)(A)'s "false pretenses, a false representation, or actual fraud" language and the substance of its allegation directs the court's analysis accordingly.

In addition to "false representation" and "false pretenses," the Supreme Court has held that § 523(a)(2)(A) also provides a cause of action for "actual fraud," or fraud that "[does] not require a misrepresentation from a debtor to a creditor." *Husky Int'l Elecs., Inc. v. Ritz*, ___U.S.___, 136 S.Ct. 1581, 1587, 194 L.Ed.2d 655 (2016); *see also, Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (6th Cir. BAP 2001). "Actual fraud" includes fraudulent transfers and "fraudulent conduct" that deals in "acts of concealment and hindrance." *Husky Int'l Elecs., Inc.*, 136 S.Ct. at 1587.

A debtor's intent to defraud a creditor is measured by a subjective standard and must be ascertained through review of the totality of the circumstances. *Rembert,* 141 F.3d at 281-82; *see also*, *Oxford*, 440 B.R. at 777. A finding of fraudulent intent may be made on the basis of circumstantial evidence or from the debtor's "course of conduct," given that direct, express proof of intent is rarely available. *Hamo v. Wilson (In re Hamo),* 233 B.R. 718, 724 (6th Cir. BAP 1999) (quoting *Hunter v. Sowers* (*In re Sowers*), 229 B.R. 151, 159 (Bankr. N.D. Ohio 1998)); *Oxford*, 440 B.R. at 777.

## II(B).   11 U.S.C. § 523(a)(6)

Section 523(a)(6) provides that a debt arising out of a "willful and malicious injury by the debtor to another entity or to the property of another entity" is excepted from the discharge injunction. *See*, *Dardinger v. Dardinger* (*In re Dardinger*), 566 B.R. 481, 493 (Bankr. S.D. Ohio 2017). Given that the word "willful" directly modifies the word "injury," "nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Schafer v. Rapp* (*In re Rapp*), 375 B.R. 421, 435-36 (Bankr. S.D. Ohio 2007)(quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 976-77, 140 L.Ed.2d 90 (1988)). A "willful" injury is one where the debtor "either desires to cause the consequences of his actions or believes 'that the consequences are substantially certain to result' from his actions." *Id.* at 436 (quoting *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 464 (6th Cir. 1999)(internal quotations omitted)); *see also*, *Monsanto Co. v. Trantham* (*In re Trantham*), 304 B.R. 298, 307 (6th Cir. BAP 2004). In other words, the debtor "must will or desire harm, or believe injury is substantially certain to occur as a result of his behavior." *Markowitz*, 190 F.3d at 465 n. 10; *Trantham*, 304 B.R. at 307.

Not only must the injury be "willful," it must also be "malicious" in order satisfy § 523(a)(6). A "malicious" injury is one where the debtor has acted "in conscious disregard of [his]

8

duties or without just cause or excuse." *Dardinger*, 566 B.R. at 493 (quoting *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)); *see also*, *Gonzalez v. Moffitt* (*In re Moffitt*), 252 B.R. 916, 923 (6th Cir. 2000). Conscious disregard of duty or a lack of justification is sufficient; the debtor does not need to "act with ill will, spite, or animosity towards the injured party" to have acted maliciously within the meaning of § 523(a)(6). *Rapp*, 375 B.R. at 436 (citing *Grange Mut. Cas. Co. v. Chapman* (*In re Chapman*), 228 B.R. 899, 909 (Bankr. N.D. Ohio 1998)).

 Plaintiff's Motion for Summary Judgment focuses solely on the issue of applying collateral estoppel, or issue preclusion, to the Default Judgment as a basis for relief under § 523(a)(2)(A) and (a)(6). [Doc. #13, pp. 4-6].

## III. Issue Preclusion as a Basis for Exception to Discharge Under § 523(a)(2)(A) and (a)(6)

 Under 28 U.S.C. § 1738, "[f]ederal courts must give 'the same full faith and credit' to a state court judgment as the judgment would be accorded under the laws of the state in which it was entered." *Dardinger*, 566 B.R. at 494 (citing *Corzin v. Fordu* (*In re Fordu*), 201 F.3d 693, 703 (6th Cir. 1999)). Thus, in order to determine whether to give preclusive effect to the Default Judgment, Section 1738 requires that this court look to how Ohio courts apply the doctrine of issue preclusion. *Id.* (quoting *Bay Area Factors v. Calvert* (*In re Calvert*), 105 F.3d 315, 317 (6th Cir. 1997)(quotation omitted)). Under Ohio law, the doctrine of issue preclusion has four elements:

> 1) A final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; 2) The issue must have been actually and directly litigated in the prior suit and must have been necessary to the final judgment; 3) The issue in the present suit must have been identical to the issue in the prior suit; 4) The party against whom estoppel is sought was a party or in privity with the party to the prior action.

*Yust v. Henkel* (*In re Henkel*), 490 B.R. 759, 771 (Bankr. S.D. Ohio 2013)(quoting *Sill v. Sweeney* (*In re Sweeney*), 276 B.R. 186, 189 (6th Cir. BAP 2002)[4]. The party invoking the doctrine of issue preclusion has the burden of establishing its application by a preponderance of the evidence. *A Packaging Serv. Co. v. Siml* (*In re Siml*), 261 B.R. 419, 422 (Bankr. N.D. Ohio 2001)(citing *Grogan*, 498 U.S. 279, 111 S.Ct. 279).

 Addressing the threshold concerns relevant to both of Plaintiff's issue preclusion claims, the court finds that the first and fourth *Sweeney* elements are satisfied as to both § 523(a)(2)(A)

---

[4] In an unpublished decision, the Sixth Circuit adopted the *Sweeney* test for issue preclusion under Ohio law. *Sanderson Farms, Inc. v. Gasbarro*, 299 Fed.Appx. 499, 504-05 (6th Cir. 2008).

17-03027-jpg Doc 16 FILED 03/06/18 ENTERED 03/06/18 16:54:52 Page 9 of 21

and § 523(a)(6).

In terms of the fourth *Sweeney* element, it is undisputed that both Plaintiff and Defendant-Debtor were parties to the State Court Action that gave rise to the Default Judgment.

As for the first *Sweeney* element, Defendant-Debtor contends that he was not given a full and fair opportunity to litigate the issue giving rise to the Default Judgment. However, he does not dispute that service in the State Court Action was adequate and "[i]t is only necessary that the opportunity to fully and fairly litigate the issues be available; it is not required that the party have exercised that opportunity." *Trentadue v. Zimmerman* (*In re Zimmerman*), 2016 WL 929264 at *4, 2016 Bankr. LEXIS 755 at *9 (Bankr. N.D. Ohio March 10, 2016)(citing *Sloan Dev., LLC v. Gill* (*In re Gill*), 2012 WL 909513 at *3, 2012 Bankr. LEXIS 1133 at *9 (Bankr. N.D. Ohio March 15, 2012)); *see also*, *S. Atl. Neurology and Pain Clinic, P.C. v. Lupo* (*In re Lupo*), 353 B.R. 534, 553 (Bankr. N.D. Ohio 2006)(holding that the full and fair opportunity element looks to "whether the party had adequate notice of the issue and was afforded the opportunity to participate in its determination.").   Further, a default judgment "is considered a final judgment on the merits for purposes of" the first *Sweeney* element. *Henkel*, 490 B.R. at 774 (citing *Wagner v. Schulte* (*In re Schulte*), 385 B.R. 181, 190 (Bankr. S.D. Ohio 2008)).   Thus, the court finds that Defendant-Debtor had a full and fair opportunity to participate in the State Court Action that gave rise to the Default Judgment, satisfying the first *Sweeney* element as to both of Plaintiff's issue preclusion claims.

The second and third *Sweeney* elements, on the other hand, require a more thorough, claim-specific analysis as discussed below.

### III(A).   Issue Preclusion under § 523(a)(2)(A)

Plaintiff argues that the Default Judgment satisfies the "identical issue" third element of the *Sweeney* test because it references default judgment granted to Plaintiff on his OCSPA claim. However, the court finds this argument unpersuasive because there are significant differences between a claim under OCSPA and the requirements for non-dischargeability under § 523(a)(2)(A).   Most importantly, a successful claim brought under OCSPA does not require wrongful intent.   All that is required is proof that the defendant "did or said something that had 'the likelihood of inducing in the mind of the consumer a belief that is not in accord with the facts." *Longbrake v. Rebarchek* (*In re Rebarchek*), 293 B.R. 400, 408 (Bankr. N.D. Ohio 2002)(quoting *Richards v. Beechmont Volvo*, 127 Ohio App.3d 188, 190, 711 N.E.2d 1088 (Ohio 1998)).

17-03027-jpg    Doc 16    FILED 03/06/18    ENTERED 03/06/18 16:54:52    Page 10 of 21

In *Rebarchek*, the court found that the "identical issue" element had been satisfied because the judgment then at issue expressly found that the defendant had both violated OCSPA and had made "material misrepresentations." *Id.*; *cf.*, *Rapp*, 375 B.R. at 432 (holding that even a state court judgment finding OCSPA violations *and* material misrepresentations may not be due preclusive effect under § 523(a)(2)(A) without additional findings). Further, the state court had also found the defendant-debtor liable for treble damages because his actions were specifically proscribed under O.R.C. § 1345.09(B). *Rebarchek*, 293 B.R. at 408. As it held that the issues involved in the state court proceeding were identical to those in the nondischargeability action then at hand, the *Rebarchek* court noted that "a debtor's violation of the Ohio Consumer [Sales Practices] Act, without more, does not require that the collateral estoppel doctrine be applied to a creditor's cause of action under § 523(a)(2)(A)." *Id.*

Here, the Default Judgment only contains references to Plaintiff's Count Six, brought under OCSPA, and Plaintiff's submitted exhibits. It contains no finding of material misrepresentation, nor does it contain any finding of fraud.[5] [Doc. #1, Pl. Ex. C]. In fact, the Default Judgment makes only two findings: 1) that Plaintiff duly filed and served his complaint; and, 2) that Defendant-Debtor failed to appear or otherwise respond. [*Id.*]. Plaintiff's state court complaint itself, and submitted exhibits, also lack the details needed for the court to give the Default Judgment preclusive effect. *See*, *Duley v. Thompson* (*In re Thompson*), 528 B.R. 721, 742 (Bankr. S.D. Ohio 2015)("…a bankruptcy court may review the entire record in the state court case to determine grounds for, or the meaning of the state court's judgment or order.")(citation omitted).

Count Six lists a variety of acts and practices declared unfair and deceptive under OCSPA. The balance of Plaintiff's state court complaint and submitted exhibits detail what appears to be a typical breach of contract action. [Doc. #13, Pl. Ex. A, B]. Nowhere does the underlying record show that the State Court Action dealt with fraud or Defendant-Debtor's intent to deceive. Further, Plaintiff's reliance on Count Six and Defendant-Debtor's alleged violation of OCSPA is unavailing without accompanying findings of wrongful intent. *See*, *Rebarchek*, 293 B.R. at 408. Thus, the Default Judgment cannot be regarded as having dealt with issues identical to those under

---

5/ Notably, Plaintiff's state court complaint does not make any allegation of fraud and "the elements of a dischargeability claim under 11 U.S.C. § 523(a)(2)(A) are virtually identical to the elements of a fraud claim in Ohio." *Ed Schory & Sons, Inc. v. Francis* (*In re Francis*), 226 B.R. 385, 389 (6th Cir. BAP 1998); *see*, *Sloan Dev., LLC v. Gill* (*In re Gill*), 2012 WL 909513, at *4, 2012 Bankr. LEXIS 1133, at *9 (Bankr. N.D. Ohio March 15, 2012)("[t]he elements of a fraudulent misrepresentation claim under Ohio law mirror the elements that must be shown in order to prevail under § 523(a)(2)(A).").

17-03027-jpg    Doc 16    FILED 03/06/18    ENTERED 03/06/18 16:54:52    Page 11 of 21

§ 523(a)(2)(A) because the latter requires a showing of "false pretenses, a false representation, or actual fraud." Accordingly, Plaintiff's issue preclusion claim brought under § 523(a)(2)(A) fails to satisfy the "identical issue" element of the *Sweeney* test.

Similarly, Plaintiff has failed to meet his burden in terms of the "actually litigated" second element of the *Sweeney* test. In order to decide whether an issue was "actually and directly litigated in the prior suit and…necessary to the final judgment," the court looks to the language of the Default Judgment in order to determine whether the state court made an "express adjudication" that allows an interpreting court to ascertain its findings of fact and/or conclusions of law. *Sweeney*, 276 B.R. at 193; *see also*, *Zaperach v. Beaver*, 6 Ohio App.3d 17, 18-19, 451 N.E.2d 1249, 1252 (Ohio Ct. App. 1982). The *Rebarchek* court described the "express adjudication" standard first set forth in *Hinze v. Robinson* (*In re Robinson*), 242 B.R. 380 (Bankr. N.D. Ohio 1999) as:

> First, the plaintiff must actually submit to the state court admissible evidence apart from his pleadings. In other words, a plaintiff's complaint, standing alone, can never provide a sufficient basis for the application of the collateral estoppel doctrine. Second, the state court, from the evidence submitted, must actually make findings of fact and conclusions of law which are sufficiently detailed to support the application of the collateral estoppel doctrine to default judgments (e.g., due process concerns), this Court will only make such an application if the circumstances of the case would make it equitable to do so.

293 B.R. at 407.

The *Sweeney* panel elaborated on the *Robinson* standard by concluding that:

> Thus, the rule established in *Robinson* is that the state court must decide the merits of the case, and the court being asked to give preclusive effect to a default judgment in a subsequent litigation must have some reliable way of knowing that the decision was made on the merits. The best evidence would be findings of fact and conclusions of law by the court entering the default judgment. These need not be entered in any special or formal way, but the default court must state what findings and conclusions, if any, it has reached in arriving at the judgment. Those findings and conclusions will have preclusive effect.

276 B.R. at 193-94.

While Plaintiff submitted evidence in support of his initial state court complaint, neither the Default Judgment nor the state court record contain enough information to allow the court to ascertain whether the issues of fraud contemplated by § 523(a)(2)(A) were actually and directly litigated in the prior State Court Action, or necessary to the state court's Judgment. Accordingly, the court is unable to give the Default Judgment preclusive effect in its nondischargeability

determination. *See*, *Henkel*, 490 B.R. at 781 ("[t]o be entitled to preclusive effect, a judgment should have sufficient detail to enable a subsequent court to have a clear understanding of the prior's ruling without having to speculate about the scope of the prior court's findings of fact and conclusions of law."). While the Default Judgment makes reference to Count Six and Plaintiff's submitted exhibits, it finds only that Plaintiff's complaint was duly filed and served, that Defendant-Debtor failed to answer or appear, and deals purely in the mechanical rendering of default judgment when a party fails to answer or otherwise dispute a complaint. [Doc. #1, Pl. Ex. C].

In addition, despite Count Six and its reference to the OCSPA, the underlying record does not contain any indication that the State Court Action dealt with allegations of fraud or wrongful intent. *See*, *Rebarchek*, 293 B.R. at 408. Thus, the court finds that Plaintiff has failed to carry his burden of showing that the issues underlying his § 523(a)(2)(A) claim were actually and directly litigated in the prior State Court Action, or necessary to the state court's entry of Default Judgment. *See*, *Schmidt v. Panos* (*In re Panos*), 573 B.R. 723, 737-38 (Bankr. S.D. Ohio 2017)(finding that a post-jury verdict Judgment was not due preclusive effect under § 523(a)(2)(A) "without more detailed findings of fact from the State Court.").

Accordingly, Plaintiff's Motion for Summary Judgment under § 523(a)(2)(A) is denied.

### III(B). Issue Preclusion under § 523(a)(6)

Plaintiff's claim under § 523(a)(6) also fails for reasons similar to those discussed above. In order for the court to give an underlying judgment preclusive effect as a basis for a § 523(a)(6) nondischargeability determination, it must contain sufficiently specific findings of fact and conclusions of law corresponding to the elements required under § 523(a)(6). *Rebarchek*, 293 B.R. at 407. In other words, "the Court must 'look to the factual findings made in the state-court proceeding and ask whether those findings would have been sufficient to sustain a finding that [Defendant-Debtor's] actions were both willful and malicious within the meaning of § 523(a)(6).'" *Dardinger*, 566 B.R. at 498 (quoting *Smith v. Cornelius* (*In re Cornelius*), 405 B.R. 597, 602 (Bankr. N.D. Ohio 2009)). Additionally, both § 523(a)(2)(A) and § 523(a)(6) require a showing of wrongful intent on the part of the debtor. *Thompson*, 528 B.R. at 740.

Because the Default Judgment and underlying state court record do not indicate that the Hancock County Common Pleas Court made any "express adjudication" as to Defendant-Debtor's state of mind, Plaintiff's § 523(a)(6) claim cannot satisfy the "identical issue" or "actually

13

litigated" elements of the *Sweeney* test. In terms of the "identical issue" element, the Default Judgment's reference to Count Six and Plaintiff's submitted exhibits are not enough for this court to determine that the state court made findings on issues identical to those required by § 523(a)(6) - namely whether Defendant-Debtor willfully and maliciously injured Plaintiff and/or his property during the course of the Ford Automobile Project. For example, in *Panos*, a creditor sought to invoke issue preclusion under § 523(a)(6) based on the fact that the underlying state court action had included jury instructions describing the propriety of punitive damages had the jury found that defendant acted with "ill will." *Panos*, 573 B.R. at 439. Even though the jury did in fact award punitive damages, the *Panos* court nevertheless held that even a jury award of punitive damages on the basis of the defendant's "ill will" was not sufficient to indicate that the state court judgment dealt with issues identical to those required under § 523(a)(6). *Id.*

Here, not only did the State Court Action not include a jury trial or verdict (or even arguments on summary judgment), the Default Judgment itself does not contain any findings as to Defendant-Debtor's allegedly willful and malicious injury to Plaintiff. [Doc. #1, Pl. Ex. C]. Particularly in light of the heightened § 523(a)(6) "intentional injury" standard set forth by the Supreme Court in *Geiger*, a judgment and its accompanying record must include specific, clear findings as to a debtor's intent to injure the creditor or creditor's property in order to satisfy the "identical issue" element of the *Sweeney* test. *See e.g.*, *Cornelius*, 405 B.R. at 602-03 (finding issue preclusion under § 523(a)(6) appropriate where, after trial, a state court expressly found that defendant had assaulted and battered plaintiff-creditor maliciously and with hatred). The Default Judgment and relatively sparse underlying state court record do not meet this burden, particularly since the only express findings made by the state court only address Defendant-Debtor's default and the inability to excuse said default. [Doc. #1, Pl. Ex. C, H]. Consequently, the court finds that the State Court Action and Default Judgment did not deal with issues identical to those required for a finding of nondischargeability under §523(a)(6).

Turning to the "actually litigated" *Sweeney* element, it is important to note that the State Court Action led to the issuance of a "true default judgment," or a default judgment granted after a defendant fails to take part in the proceedings in any way. *See*, *Dardinger*, 566 B.R. at 496-97. In *Dardinger*, the court found the "actually litigated" *Sweeney* element satisfied when faced with a defendant that had "asserted counterclaims, participated in discovery and defended against [plaintiff's] motion for summary judgment" in the state court proceedings *Id.* at 497. The

14

*Dardinger* court noted that "application of the doctrine of issue preclusion under the circumstances of this case does not raise the same due process concerns that have troubled courts in the context of a 'true default judgment'…." *Id.* at 496. In contrast to the facts presented in *Dardinger*, Defendant-Debtor did not take part in the State Court Action prior to the entry of the Default Judgment, and though he attempted to file an untimely answer [Doc. #1, Pl. Ex. D, E] and sought to have the Judgment set aside [*Id.*, Pl. Ex. F, H], the record does not indicate that the state court ever actually dealt with the merits of Plaintiff's claims.

Further, the Default Judgment's use of rote default language, and the lack of express findings with regard to Defendant-Debtor's intent, suggest that the issue of whether Defendant-Debtor willfully and maliciously injured Plaintiff and/or his property was neither actually and directly litigated, nor necessary to the state court's Default Judgment. *See*, *Dardinger*, 566 B.R. at 496 (finding issue preclusion appropriate where the "State Court's Findings and Conclusions…are seven pages in length and more than sufficiently detailed to support the application of the collateral estoppel doctrine.")(internal quotation omitted). Accordingly, the court finds that the issues underlying Plaintiff's § 523(a)(6) claim were not "actually and directly litigated" in the State Court Action for the purposes of the *Sweeney* issue preclusion test.

Thus, Plaintiff's Motion for Summary Judgment as to his § 523(a)(6) claim is denied.

## IV. Rooker-Feldman Doctrine/Collateral Attack on State Court Judgments

Plaintiff contends that the Rooker-Feldman doctrine requires that the court give preclusive effect to the Default Judgment. However, this argument misunderstands the doctrine and the jurisdiction of this court in the context of fraud-based nondischargeability determinations.

Generally speaking, the Rooker-Feldman doctrine prohibits lower federal courts from engaging in appellate review of state court decisions. *Singleton v. Fifth Third Bank* (*In re Singleton*), 230 B.R. 533, 536 (6th Cir. BAP 1999). The *Sweeney* panel described bankruptcy courts' discharge jurisdiction in the context of the Rooker-Feldman doctrine as:

> The dischargeability of a debt must be recognized as a matter separate from the merits of the debt itself. Thus, under the *Rooker-Feldman* doctrine, a bankruptcy court may not review and redetermine the merits of a debt or set aside the default judgment reflecting it, but it may within its exclusive jurisdiction determine whether that debt is dischargeable or not. The bankruptcy court [is] not called upon to reverse the state court action or void its ruling. Rather, the issue before the court and this Panel is whether to give preclusive effect to the state court judgment so as to drive the trial court's determination of nondischargeability.

276 B.R. at 195 (quotation and citations omitted).  Further, the *Sweeney* panel noted that dischargeability determinations under § 523(a)(2) and (a)(6) are not collateral attacks on state court judgments and are instead independent matters that are exclusively within the purview of the lower federal courts. *Id.*  Moreover, the issue of dischargeability does not arise until a bankruptcy has been filed.  This Chapter 7 case was not commenced until after the Default Judgment was entered.

Accordingly, Plaintiff's argument that the Rooker-Feldman doctrine requires the court to give preclusive effect to the Default Judgment fails because nondischargeability determinations under § 523(a)(2)(A) and (a)(6) do not amount to a review of the underlying state court judgment[6] and are instead independent claims exclusively within the jurisdiction of lower federal courts.[7] *Id.*; 11 U.S.C. § 523(c).  Similarly, a determination that the Default Judgment is not due preclusive effect for dischargeability purposes under § 523(a)(2)(A) or (a)(6) does not constitute a collateral attack on the state court judgment because said determination neither "reverse[s] the state court action [n]or void[s] its ruling." *Sweeney,* 276 B.R. at 195 (quoting *Singleton*, 230 B.R. at 536-37); *see also*, *In re Hamilton*, 540 F.3d 367, 374-75 (6th Cir. 2008).

In sum, Plaintiff's Motion for Summary Judgment is denied in its entirety because the Default Judgment and the state court record does not meet the burden, established by the *Sweeney* test, for giving preclusive effect to judgments under Ohio law.

**V.   Defendant-Debtor's Motion for Summary Judgment**

Having addressed Plaintiff's Motion for Summary Judgment, brought solely on issue preclusion grounds, the court turns to Defendant-Debtor's Motion for Summary Judgment on Plaintiff's remaining allegations under § 523(a)(2)(A) and § 523(a)(6).  Because there are genuine issues of material fact surrounding the Ford Automobile Dispute, particularly with regards to Defendant-Debtor's conduct and intent, the court finds that Defendant-Debtor is not entitled to summary judgment on Plaintiff's remaining claims. *See*, *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

**V(A).   § 523(a)(2)(A)**

---

6/   The existence and amount of Defendant-Debtor's debt owed Plaintiff were conclusively determined by the state court's Default Judgment and are not at issue here.

7/   State and federal courts maintain concurrent jurisdiction over dischargeability determinations that do not implicate fraud, such as those that regard debts owing from domestic support obligations and divorce property settlements under § 523(a)(5) and (a)(15). *See*, *Lewis v. Lewis* (*In re Lewis*), 423 B.R. 742, 755 (Bankr. W.D. Mich. 2010)("…state courts have concurrent jurisdiction with…bankruptcy court[s] over nondischargeability debt determinations to be decided under § 523(a)(15).").

16

As described above, § 523(a)(2)(A) requires a showing that the debtor incurred a debt through use of a material misrepresentation that the debtor knew was false or was made with gross recklessness as to its truth. *Rembert,* 141 F.3d at 280. Alternatively, a showing of "actual fraud", through reference to a debtor's fraudulent transfer or fraudulent conduct, may also be sufficient. *Husky Int'l Elecs., Inc.*, 136 S.Ct. at 1587. Additionally, the creditor seeking a § 523(a)(2)(A) nondischargeability determination must show that the debtor acted with an intent to deceive, that the creditor justifiably relied on the debtor's fraudulent conduct or representation, and that said reliance was the proximate cause of the creditor's injury. *Rembert,* 141 F.3d at 280-81; *Thompson*, 528 B.R. at 738.

A finding of fraudulent intent may be made on the basis of circumstantial evidence or from the debtor's "course of conduct", as direct proof of intent will rarely be available. *Hamo*, 233 B.R. at 724; *Oliver v. Zimmerman* (*In re Zimmerman*), 567 B.R. 521, 526 (Bankr. N.D. Ohio 2017); *Risk v. Hunter* (*In re Hunter*), 535 B.R. 203, 213 (Bankr. N.D. Ohio 2015); *Chase Bank v. Brumbaugh* (*In re Brumbaugh*), 383 B.R. 907, 912 (Bankr. N.D. Ohio 2007); *EDM Machine Sales v. Harrison* (*In re Harrison*), 301 B.R. 849, 854 (Bankr. N.D. Ohio 2003).

Similarly, a subjective intent to injure, as well as "malice", can be inferred from surrounding circumstances. *Carillo v. Su (In re Su)*, 290 F.3d 1140, 1146 n.6 (9th Cir. 2002); *Albarran v. New Form, Inc. (In re Albarran)*, 347 B.R. 369, 384 (9th Cir. BAP 2006); *Jennings v. Bodrick* (*In re Bodrick*), 558 B.R. 848, 853 (Bankr. S.D. Ohio 2016); *Web v. Web (In re Web)*, 525 B.R. 226, 233 (Bankr. M.D. Pa. 2015); *United States v. Shelmidine* (*In re Shelmidine*), 519 B.R. 385, 393 (Bankr. N.D.N.Y. 2014); *Tenet S. Fulton, Inc. v. Demps* (*In re Demps*), 506 B.R. 163, 172 (Bankr. N.D. Ga. 2014); *Allison v. Dean (In re Dean)*, 2013 WL 1498305 at *4, 2013 Bankr. LEXIS 1471 at *9 (Bankr. M.D. Ala. April 10, 2013); *Harr v. Harr* (*In re Harr*), 2000 WL 620799 at *6, 2000 Bankr. LEXIS 401 at *16 (Bankr. S.D. Ohio March 24, 2000).

Thus, where a debtor's subjective intent is at issue, summary judgment is generally inappropriate unless all reasonable inferences defeat the claims of the opposing party. *Sicherman v. Rivera (In re Rivera)*, 338 B.R. 318, 327 (Bankr. N.D.Ohio 2006)(citing *Hoover v. Radabaugh*, 307 F.3d 460, 467 (6th Cir. 2002)("When the defendants' intent is at issue, summary judgment is particularly inappropriate.")). In contrast, at trial: "If there is room for an inference of honest intent, the question of nondischargeability must be resolved in favor of the debtor." *Zimmerman*, 567 B.R. at 526; *Wentland*, 410 B.R. at 594; *Buckeye Retirement Co., LLC v. Kakde (In re Kakde)*,

382 B.R. 411, 427 (Bankr. S.D. Ohio 2008).

Plaintiff alleges that, with regard to the Ford Automobile Project, Defendant-Debtor's 1) acceptance of Plaintiff's initial down payment, 2) subsequent request for additional compensation, and 3) retention of Plaintiff's down payment are unconscionable and deceptive in violation of § 523(a)(2)(A). [Doc. #1, p. 4]. Though Plaintiff's allegations largely recite the language of both OCSPA and § 523(a)(2)(A), when viewed in concert with the affidavits and exhibits submitted by both parties in support of their Motions, the allegations establish genuine issues of triable fact as to 1) whether Defendant-Debtor made material misrepresentations and/or acted fraudulently at the outset of the Ford Automobile Project; and, 2) whether Defendant-Debtor entered into the Ford Automobile Project with an intent to defraud Plaintiff. *See*, *Husky Int'l Elecs., Inc.*, 136 S.Ct. at 1591 ("Section 523(a)(2)(A) applies only when the fraudulent conduct occurs at the inception of the debt…").

Given the lack of a written contract between the parties from which definite terms of the Ford Automobile Project can be adduced, neither Plaintiff nor Defendant-Debtor have presented the evidence needed for this court to grant judgment as a matter of law. In other words, the court finds that the relatively sparse evidentiary record at hand raises issues of disputed fact sufficient to render summary judgment inappropriate, largely because the uncertain terms of the oral agreement underpinning the Ford Automobile Project allow for competing inferences of relatively equal weight to be drawn against both parties. *See*, *Rivera*, 338 B.R. at 327; *Desmond v. Varasso* (*In re Varasso*), 37 F.3d 760, 764 (1st Cir. 1994)("…when facts…are capable of supporting conflicting yet plausible inferences…then the choice between those inferences is not for the court on summary judgment.").

Cases in which courts have analyzed the propriety of summary judgment in the context of a disputed written contract further weigh against this court's grant of summary judgment to Defendant-Debtor. In *Hunter*, for example, this court granted summary judgment to the defendant on the basis that "[w]ithout any demonstration of an intent to deceive, proof of a breach of contract does not support a Section 523(a)(2)(A) finding." 535 B.R. at 218. However, the parties in *Hunter* laid out the terms of their agreement in a written contract against which this court analyzed the conduct of the parties, particularly the defendant's actions as they related to his intent to perform under the contract. *Id.* Further, *Hunter* involved a related state court's findings of fact and conclusions of law, further bolstering an evidentiary record that this court utilized in granting

summary judgment to the defendant as to the plaintiff's § 523(a)(2)(A) claim. *Id.*

In *PNC Bank, N.A. v. Laskey* (*In re Laskey*), 441 B.R. 853 (Bankr. N.D. Ohio 2010), the court denied both parties' cross-motions for summary judgment on plaintiff's § 523(a)(2)(A) claim. Much like in *Hunter*, the *Laskey* court compared the defendant-debtor's conduct with the terms of a written agreement that outlined the scope of his use of a business credit line. 441 B.R. at 856-57. Before concluding that inferences could be drawn against both parties in a manner that precluded summary judgment, the *Laskey* court noted that "issues involving an individual's state of mind" usually require a trial because "[d]eterminations concerning a debtor's state of mind require a subjective assessment of the debtor's intent which often can only be made by the trier-of-fact after it has had the opportunity to assess the credibility and the demeanor of witnesses who testify…." 441 B.R. at 856.

The court finds that *Hunter* and *Laskey* both support the denial of summary judgment to Defendant-Debtor. In this case, the court is faced with an even sparser record than *Hunter* and *Laskey*, containing conflicting affidavits, references to an oral contract with disputed terms, and a state court Default Judgment that made no factual findings relevant to a nondischargeability determination. [Doc. 12-1; Doc. 13-2; Doc. #1, Pl. Ex. C]. Additionally, the available facts allow for inferences to be drawn both for and against Defendant-Debtor's allegedly fraudulent intent with regards to the Ford Automobile Project such that the court finds "a subjective assessment" based upon trial testimony to be appropriate. *See*, *Laskey*, 441 B.R. at 856; *Varasso*, 37 F.3d at 764.

Accordingly, the court denies Defendant-Debtor's Motion for Summary Judgment as to Plaintiff's § 523(a)(2)(A) claim.

**V(B). § 523(a)(6)**

Defendant-Debtor also argues that he is entitled to summary judgment on Plaintiff's §523(a)(6) claim. However, this argument fails because Plaintiff's allegations and the record reflect facts that raise a genuine dispute as to whether Defendant-Debtor's conduct constitutes an "intentional injury" under the *Geiger* § 523(a)(6) standard. In order to prevail under § 523(a)(6), the creditor seeking nondischargeability needs to show that the debtor injured the creditor or his property willfully and maliciously. *Dardinger*, 566 B.R. at 493. A debtor injures a creditor "willfully" if he "will[ed] or desire[ed] harm, or believe[d] injury [was] substantially certain to occur as a result of his behavior." *Markowitz*, 190 F.3d at 465 n. 10; *Geiger*, 523 U.S. at 61, 118

S.Ct. at 976-77. Additionally, the debtor must have injured a creditor maliciously, or acted "in conscious disregard of [his] duties or without just cause or excuse," in order for the debt at issue to be found nondischargeable. *Dardinger*, 566 B.R. at 493 (quoting *Wheeler*, 783 F.2d at 615).

Here, Plaintiff specifically points to Defendant-Debtor's retention of the parts, once the Ford Automobile Project came into dispute, as "willful and malicious in nature". [Doc. #1, p. 4]. While this allegation is relatively threadbare and conclusory, the record's lack of objective evidence regarding Defendant-Debtor's intent counsels against the court's grant of summary judgment under § 523(a)(6). *See*, *Radabaugh*, 307 F.3d at 467. While Defendant-Debtor claims that he retained these parts "[u]nder Ohio common law provisions," the only evidence offered in support consists solely of Defendant-Debtor's affidavit which is, itself, relatively threadbare and conclusory on this issue. [Doc. #12-1, p. 3]. Without getting to the merits of that claim, the court finds that "a subjective assessment" of Defendant-Debtor's credibility via trial is warranted here, particularly given Defendant-Debtor's characterization of his refusal to turnover Plaintiff's parts as "[u]under Ohio common law provisions." *Id.*; *see*, *Laskey*, 441 B.R. at 856.

Moreover, without evidence detailing precisely what occurred during the course of the Ford Automobile Project, the court is unable to determine whether, as a matter of law, Defendant-Debtor's retention of Plaintiff's automobile parts constitutes an "intentional injury" under *Geiger*. While Defendant-Debtor may have been holding onto Plaintiff's property in good faith, the parties appear to agree that, at least initially, Plaintiff was going to be allowed to remove all of the automobile parts. [Doc. #12-1, p. 2; Doc. #13-2, p. 4]. The basis for the change in Defendant-Debtor's position is not reflected in the sparse record before the court, nor is the vague reference to "Ohio common law provisions" sufficient. [Doc. #12-1, p. 3]. As is the case with Defendant-Debtor's pursuit of summary judgment on Plaintiff's § 523(a)(2)(A) claim, the court's ability to draw competing inferences against both parties relative to Defendant-Debtor's retention of Plaintiff's parts weighs against the granting of summary judgment on Plaintiff's § 523(a)(6) claim. *See*, *Rivera*, 338 B.R. at 327; *Varasso*, 37 F.3d at 764.

Accordingly, the court will deny Defendant-Debtor's Motion for Summary Judgment as to Plaintiff's § 523(a)(6) claim.

## VI. Conclusion

Taken as a whole, the record in this case, including the parties' motions, briefs, exhibits, and affidavits, do not provide the court with a sufficient basis to grant either party judgment as a

matter of law.    Thus, court finds that summary judgment is inappropriate based upon the existence of genuine issues of material fact as to whether Defendant-Debtor made material misrepresentations or intended to defraud Plaintiff during the course of the failed Ford Automobile Project, or intended to injure Plaintiff. *See*, *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

THEREFORE, for the foregoing reasons, good cause appearing,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment [Doc. # 13] is DENIED.

IT IS FURTHER ORDERED that Defendant-Debtor's Motion for Summary Judgment [Doc. #12] is DENIED.

IT IS FURTHER ORDERED that a pretrial hearing is hereby scheduled for April 18, 2018, at 10:30 a.m., in Courtroom No. 1, Room 119, United States Courthouse, 1716 Spielbusch Avenue, Toledo, Ohio.

IT IS SO ORDERED.